# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **ONEPASS DATA TECHNOLOGY LLC,**<br><br>  **Plaintiff,**<br><br>v.<br><br>**AT&T MOBILITY LLC AND AT&T SERVICES, INC.,**<br><br>  **Defendants.** | **Before:  Jennifer Choe-Groves, Judge**<br><br>**Court No. 1:25-cv-01111-JCG** |

## OPINION AND ORDER

[Denying Defendants' Motion to Dismiss.]

Dated: May 26, 2026.

Donald C. Vavala, III and David E. Wilks, Wilks Law LLC, of Wilmington, DE; David Leichtman, Robert K. Goethals, and Devin L. Newman, Ellenoff Grossman & Schole LLP, of New York, N.Y.  Attorneys for Plaintiff OnePass Data Technology LLC.

Kelly E. Farnan, Richards, Layton & Finger, P.A., of Wilmington, DE; Stephen E. Baskin, Dara Kurlancheek, and Patrick Lafferty, King & Spalding LLP, of Washington, D.C.  Attorneys for Defendants AT&T Mobility LLC and AT&T Services, Inc.

Choe-Groves, Judge: OnePass Data Technology LLC ("Plaintiff" or "OnePass") filed this case against Defendants AT&T Mobility LLC ("AT&T Mobility") and AT&T Services, Inc. ("AT&T Services") (collectively, "Defendants") alleging infringement of U.S. Patent Numbers 7,376,680 ("'680

Court No. 25-1111                                                                 Page 2

Patent") and 8,682,866 ("'866 Patent") (collectively, "Asserted Patents").  Pl.'s

Compl. Patent Infringement ("Compl.") (D.I. 1); see Compl. at Ex. A ("'680

Patent") (D.I. 1-1); Compl. at Ex. C ("'866 Patent") (D.I. 1-3).  Defendants filed a

motion to dismiss Plaintiff's Complaint, arguing that the Asserted Patents fail to

recite patent eligible subject matter under 35 U.S.C. § 101 and that the Complaint

fails to state a plausible claim for relief.  See Defs.' Mot. Dismiss ("Motion to

Dismiss") (D.I. 24); Defs.' Opening Br. Supp. Mot. Dismiss Fed. R. Civ. P.

12(b)(6) ("Defs.' Br.") (D.I. 25).  The Court held oral argument on April 1, 2026.

Order (Jan. 6, 2026) (D.I. 27).  For the reasons discussed below, Defendants'

Motion to Dismiss is denied.

## BACKGROUND

OnePass is an Ohio limited liability company with a principal place of

business in Chagrin Falls, Ohio.  Compl. at ¶ 1.  The Complaint alleges that

OnePass is the assignee of all right, title, and interest in the Asserted Patents.  Id. at

¶ 13.  The United States Patent and Trademark Office ("USPTO") issued the '680

Patent on May 20, 2008, titled "System And Method For Cleansing And

Appending Data Records Of A Database."  Id. at ¶ 10; see '680 Patent.  The

USPTO issued an Ex Parte Reexamination Certificate for the '680 Patent on April

26, 2017.  Id. at ¶ 11; see Compl. at Ex. B ("'680 Patent Reexamination Cert.")

(D.I. 1-2).  The USPTO issued the '866 Patent on March 25, 2014, titled "System

Court No. 25-1111                                                    Page 3

And Method For Cleansing, Linking, And Appending Data Records Of A

Database." Compl. at ¶ 12.  The Asserted Patents share a common specification

and claim priority to the same provisional application, U.S. Patent Number

60/461,272.  '680 Patent at 1:8–19; '866 Patent at 1:8–21.  The '866 Patent is a

continuation of the '680 Patent.  See '866 Patent at [63].

OnePass contends that the Asserted Patents recite inventions that are

directed to innovative technological solutions for cleaning data records, providing

significant improvements and advantages over conventional data cleansing

technology.  Compl. at ¶ 15.  The claimed inventions recited in the Asserted

Patents allegedly provide advances in efficiency, reliability, and operation of

applications in the data cleansing industry.  Id. at ¶ 16.  OnePass claims that such

inventions include improved measures of time and space complexity, and wall-

clock time performance, compared to the conventional technology available at the

time of the inventions.  Id.

The Complaint claims that AT&T Mobility is a Delaware limited liability

company with a place of business in Atlanta, Georgia.  Id. at ¶ 4.[1]  OnePass alleges

that Defendants directly infringe at least Claims 1–7 of the '680 Patent and

---

[1] On November 21, 2025, the Court granted the Parties' Stipulation and Proposed
Order to Dismiss, Substitute Parties and Amend Caption, and ordered that AT&T
Services, Inc. be added as a Defendant and that this substitution relates back to the
acts alleged in Plaintiff's Complaint.  Order (D.I. 23).

Court No. 25-1111                                                                   Page 4

Claims 1–3, 9, and 16 of the '866 Patent.  Id. at ¶¶ 35, 57, 68.  OnePass accuses

Defendants of using certain "Accused Methods" to infringe method claims of the

Asserted Patents, and of making, implementing, using, and operating certain

"Accused Systems" to infringe system claims of the '866 Patent.  Id. at ¶ 25.  The

Complaint claims that Defendants have obtained U.S. Postal Service-issued Permit

Imprint Authorization for First-Class and Standard Mail, and that Defendants

participate in the USPS CASS™ program.  Id. at ¶¶ 26–27.  Defendants allegedly

use the USPS CASS™ program to standardize, correct, and verify mailing list

address records and therefore qualify for automation prices for First-Class and

Standard Mail.  Id.

OnePass alleges that Defendants operate a single controlled system for

mailing list address record cleansing that consists of the following components:

(a) non-volatile memory for storing (i) an input file containing customer mailing

address records, (ii) the USPS ZIP + 4®, City/State, DPV®/DSF2®, LACSLink®

and SuiteLink® reference files, and (iii) an output file containing cleansed

customer mailing address records; (b) volatile memory for processing input file

customer mailing address records; and (c) CASS™-certified software configured

to standardize, correct, and verify customer mailing address records pursuant to the

USPS Cycle N or Cycle O CASS™ requirements.  Id. at ¶ 28.  The Complaint

claims that Defendants have made, implemented, operated, used, or otherwise

exercised control over the Accused Systems and Accused Methods for processing customer mailing address records and cleansing mailing list address records in compliance with the USPS Cycle N or Cycle O CASS™ requirements.  Id. at ¶¶ 29–30.

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyright, and trademarks.  28 U.S.C. §§ 1331, 1338.

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  If a pleading fails to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.

In considering a motion to dismiss, the Court must assume that the factual allegations contained in the complaint are true.  Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555); see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis.").

Patent eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts.  See Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018); Berkheimer v. HP Inc., 881 F.3d 1360, 1364–65 (Fed. Cir. 2018).  Disputes over eligibility can be resolved on a Rule 12(b)(6) or Rule 12(c) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."  SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (citing Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC, 874 F.3d 1329, 1341 (Fed. Cir. 2017); RecogniCorp, LLC v. Nintendo Co., 855 F.3d 1322, 1328 (Fed. Cir. 2017); FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1098 (Fed. Cir. 2016); Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369,

1380 (Fed. Cir. 2016); Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 717 (Fed.

Cir. 2014)).

## DISCUSSION

### I.    Patent-Eligible Subject Matter

Defendants move to dismiss Plaintiff's Complaint for failure to state a

plausible claim for relief and contend that all claims in the Asserted Patents are

unpatentable under 35 U.S.C. § 101.  Defs.' Br.

35 U.S.C. § 101 makes patentable "any new and useful process, machine,

manufacture, or composition of matter, or any new and useful improvement

thereof."  35 U.S.C. § 101.  This broad provision has an important exception:

"[l]aws of nature, natural phenomena, and abstract ideas are not patentable."  Alice

Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice"), 573 U.S. 208, 216 (2014).  The

purpose of these exceptions is to protect the "basic tools of scientific and

technological work."  Mayo Collaborative Servs. v. Prometheus Labs., Inc.

("Mayo"), 566 U.S. 66, 71 (2012).  Eligibility "is a question of law" with

"underlying questions of fact."  Simio, LLC v. FlexSim Software Prods., Inc., 983

F.3d 1353, 1358–59 (Fed. Cir. 2020).

In Alice, the Supreme Court reaffirmed the two-step framework set forth in

Mayo for distinguishing patents that claim ineligible subject matter from those that

claim patent-eligible applications of those concepts.  Alice, 573 U.S. at 217.  In

Court No. 25-1111                                                          Page 8

step one, the court must determine whether the claims are drawn to a patent-ineligible concept, such as an abstract idea.  Id.  The court examines the focus of the claim and its character as a whole.  SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1167 (Fed. Cir. 2018).  Courts must consider whether the focus of the claims is on "the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  Finjan, Inc. v. Blue Coat Sys., Inc. ("Finjan"), 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting Enfish, LLC v. Microsoft Corp. ("Enfish"), 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

If the claims are drawn to an abstract idea at step one of the analysis, the Court then turns to step two to examine "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept–i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  Alice, 573 U.S. at 217–218 (citations omitted).  "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."  Id. at 221.  Such "additional features" are not enough to constitute an inventive concept if they are "well-understood, routine, conventional activities."  Id. at 225 (citation omitted).  To transform an unpatentable concept into a patent-eligible

Court No. 25-1111                                                    Page 9

application, "one must do more than simply state the [ineligible concept] while adding the words 'apply it.'" Mayo, 566 U.S. at 72 (emphasis omitted).

## II.    Representative Claim

A court may limit its analysis of a 35 U.S.C. § 101 challenge to representative claims when the claims at issue are "substantially similar and linked to the same ineligible concept." Mobile Acuity Ltd. v. Blippar Ltd. ("Mobile Acuity"), 110 F.4th 1280, 1290 (Fed. Cir. 2024) (internal quotation omitted). Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat the claim as representative." See Berkheimer, 881 F.3d at 1365 (citations omitted).

The patent challenger asserting that a claim is representative of multiple claims bears the initial burden of making a prima facie showing that the group of claims is substantially similar and linked to the same ineligible concept. Mobile Acuity, 110 F.4th at 1290 (citation omitted). If a prima facie showing is made, the burden shifts to the patent owner to demonstrate why the eligibility of the purported representative claim is not decisive of the eligibility of the other claims within the identified group. Id. If the patent owner cannot make a non-frivolous argument against treating the identified claim as representative, it is precluded from arguing the eligibility of the other claims in the group. Id. (citations omitted).

Court No. 25-1111                                                      Page 10

Defendants argue that Claim 1 of the '680 Patent is representative of all independent claims in the Asserted Patents because they are substantially similar and linked to the same abstract idea, and that the dependent claims do not provide separate bases for eligibility.  Defs.' Br. at 6–7.  Claim 1 of the '680 Patent recites:

> 1. A method for creating a cleansed output file containing a plurality of business data records from a single pass through an input file, comprising the steps of:
> (a) selecting an input file containing a plurality of data records;
> (b) selecting a reference file, said reference file containing a plurality of data records;
> (c) computing a search key; and
> (d) for each said data record in said input file:
>> (i) retrieving said data record from said input file on remote storage;
>> (ii) searching said reference file with a matcher process for all said data records in said reference file that match said search key and reading each said data record from said reference file that matches said search key, thereby generating a candidate data record list;
>> (iii) searching said candidate data record list and determining a matching data record, wherein said matching data record matches said data record in said input file;
>> (iv) creating a new cleansed data record;
>> (v) cleansing said data record of said input file according to said matching data record, thereby generating verified information;
>> (vi) writing said verified information into said new cleansed data record; and
>> (vii) writing said new cleansed data record to a cleansed output file;
> wherein said steps (d)(i) through (d)(vii) are performed in a single pass through said data records of said input file and in a single pass through said reference file, such that each data record of said input file is read from a remote storage location only once, each said matching data record of said reference file is read from a remote storage location only once, and each said new data record to said cleansed output file is written to a remote storage location only once.

Court No. 25-1111                                                        Page 11

'680 Patent at 25:16–53.[2]  The '680 and '866 Patents share a common specification

and claim priority to the same provisional application, and the '866 Patent is a

continuation of the '680 Patent.  '680 at [60], [57]; '866 Patent at [60], [63], [57].

    As the party identifying Claim 1 as the representative claim, Defendants

have the initial burden to make a prima facie showing that the representative claim

is "substantially similar and linked to the same" allegedly abstract concept.  Mobile

Acuity, 110 F.4th at 1290.  Defendants argue that the claims in the Asserted

Patents concern the abstract idea of updating records by comparing them against

reference lists.  Defs.' Br. at 1, 8.  Defendants aver that the claims recite the

process of retrieving business records, comparing them to reference files, and

writing updated records.  Id. at 1.  Defendants claim that this is an abstract idea and

that the Asserted Patents' specifications concede the use of routine and

conventional components and processes to apply this abstract idea to a computer.

Id.

    The '680 Patent has 19 claims, with Claim 1 serving as an independent

claim, and the '866 Patent has 16 claims, with Claims 1, 10, and 16 serving as

---

[2] The Ex Parte Reexamination Certificate amended Claim 1 to include the phrase "computer-implemented" before "method" in column 25, line 16.  '680 Patent Reexamination Cert. at 1:18.  All claims in the '680 Patent included this amendment.  Id. at 1:18–5:5.  The USPTO determined Claims 1–19 to be patentable as amended.  Id. at 1:16.

Court No. 25-1111                                                      Page 12

independent claims.  '680 Patent at 25:15–67, 26:1–67, 27:1–59, 28:1–57; '866

Patent at 24:31–67, 25:1–48, 26:1–47; see Defs.' Br. at 6.  Defendants' Motion to

Dismiss includes an Exhibit F that compares the independent claims in the

Asserted Patents to show substantial similarities and links to the same abstract

idea.  See Defs.' Br. at 6; Ex. F (D.I. 25-6).  Defendants explain that Claim 1, and

the other independent claims, recite the following steps: (a) and (b) "selecting"

files; (c) and (d)(ii)–(iii) "computing" and "searching" with search keys; (d)(i)

"retrieving" records; and (d)(iv)–(vii) "creating," "cleaning," and "writing" data

records.  Id. at 6–7.  Defendants claim that these steps are general data processing

steps that align with the three basic functions of the invention described in the

specification.  Id. at 7 (the three basic functions include: "(1) retrieving a data

record from an input file once, (2) processing that data record against one or more

reference files, and (3) outputting the results to an output file once."); see '680

Patent at 3:16–22.

     Defendants aver that the dependent claims fail to provide separate bases for

eligibility by only making the following additions: (A) generic processing steps,

including repeating certain processing steps or adding matchers, search keys,

and/or reference files (Claims 2–7 of the '680 Patent; Claims 2, 9, 11, 13, 14 of the

'866 Patent); (B) specific types or locations of data records, input files, reference

files, output files, or search keys (Claims 8, 9, 11, 13, 15, 18, 19 of the '680 Patent;

Claims 3, 5, 6 of the '866 Patent); (C) the process or criteria for determining a match (Claims 12, 14 of the '680 Patent; Claims 8, 15 of the '866 Patent); and (D) generic encryption or access control (Claims 16, 17 of the '680 Patent; Claims 4, 7, 12 of the '866 Patent).  Defs.' Br. at 7.

OnePass states that Defendants have failed to meet their burden to establish that Claim 1 is representative of all of Plaintiff's patent claims, and argues that Defendants rely on an oversimplified abstract idea as the basis for their argument and gloss over the distinct claim limitations in Plaintiff's dependent claims.  Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss Compl. ("Pl.'s Br.") at 15 (D.I. 29).  As an example, Plaintiff identifies the "recycling" limitations recited in Claim 5 of the '680 Patent and Claim 9 of the '866 Patent, and avers that this limitation is not substantially similar to or linked to Defendants' proposed abstract idea.  Id.  In response, Defendants argue that the Asserted Patents explain that the "recycling" limitation means "nothing more than repeating the same generic 'matcher'/'matching' process on the same conventional 'data record'/'input[,]'" and claim that simply repeating the same generic processing steps on the same conventional data fails to add anything patently distinct.  Defs.' Reply Br. Supp. Mot. Dismiss Fed. R. Civ. P. 12(b)(6) ("Defs.' Reply Br.") at 8 (D.I. 30) (citing Recentive Analytics, Inc. v. Fox Corp., 692 F. Supp. 3d 438, 451 (D. Del. 2023), aff'd, 134 F.4th 1205 (Fed. Cir. 2025)).  Defendants also note that OnePass only

Court No. 25-1111                                                            Page 14

raised this argument regarding the "recycling" limitations to oppose

representativeness, and did not dispute that Claim 1 of the '680 Patent is

representative of 33 out of the 35 challenged claims.  See id.

The Court concludes that Defendants have made a prima facie showing that

the '680 and '866 Patents' claims are "substantially similar and linked to the same"

allegedly abstract concept of updating records by comparing them against

reference lists.  Mobile Acuity, 110 F.4th at 1290.  The burden now shifts to

OnePass to present a non-frivolous argument for why the eligibility of Claim 1

cannot be fairly treated as representative of all claims.  Id.  OnePass argues that

Defendants rely on an "oversimplified" abstract idea to argue representativeness

for Claim 1, however, Plaintiff provides no further argument against Claim 1

sharing substantial similarities to the Asserted Patents' other independent claims.

Pl.'s Br. at 15.  While OnePass raises the "recycling" limitations in Claim 5 of the

'680 Patent and Claim 9 of the '866 Patent as examples of distinct technological

improvements that disqualify the representativeness of Claim 1 of the '680 Patent,

these limitations "recite little more than the same [allegedly] abstract idea[.]"  Id.;

Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n

("Content Extraction"), 776 F.3d 1343, 1348 (Fed. Cir. 2014).  The Asserted

Patents' recycling capabilities regurgitate the processes already conducted to

reprocess data against previously accessed reference files.  '680 at 7:17–26; '866 at

7:12–20.  Plaintiff has not shown that Claim 5 of the '680 Patent or Claim 9 of the '866 Patent are significantly distinct from Claim 1 of the '680 Patent to an extent that would require a separate eligibility analysis.  See Berkheimer, 881 F.3d at 1365.  The Court concludes that OnePass has failed to meet its burden.  Accordingly, the Court will consider Claim 1 of the '680 Patent as representative of the other patent claims.

## A.   **Alice Step One**

Step one of the Alice analysis requires the Court to "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  Alice, 573 U.S. at 218.  The Court considers the claim's "character as a whole."  Enfish, 822 F.3d at 1335.  Eligible patent claims must "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."  McRO, Inc. v. Bandai Namco Games Am., Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citing Enfish, 822 F.3d at 1336).  The claims must do more than break down and organize the steps that humans regularly go through in their minds when performing tasks.  See In re Jobin, 811 Fed. App'x. 633, 637 (Fed. Cir. 2020).

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has "treated collecting information, including when limited to particular content (which does

not change its character as information), as within the realm of abstract ideas[,]"

along with the analysis and display of information.  Elec. Power Grp., LLC v.

Alstrom S.A. ("Electric Power Group"), 830 F.3d 1350, 1353 (Fed. Cir. 2016);

Content Extraction, 776 F.3d at 1347 (concluding that the claims of the asserted

patents are drawn to the abstract idea of collecting data, recognizing certain data

within the collected data set, and storing that recognized data).  The CAFC has

explained that claims reciting information collecting concepts, either individually

or collectively, "fall into a familiar class of claims" directed to patent-ineligible

concepts:

> Information as such is an intangible.  Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.  In a similar vein, we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category.  And we have recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.

Electric Power Group, 830 F.3d at 1353–54 (internal citations omitted).

Claims that are directed to an abstract idea and applied with generic,

conventional computer components have been held consistently to be patent

ineligible.  See Intell. Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363,

1367–69 (Fed. Cir. 2015) (claims adding generic computer components to

financial budgeting); OIP Techs. Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362–

64 (Fed. Cir. 2015) (claims implementing offer-based price optimization using

conventional computer activities); Ultramercial. Inc., 772 F.3d at 714–17 (claims

applying an exchange of advertising for copyrighted content to the Internet);

buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1354–55 (Fed. Cir. 2014) (claims

adding generic computer functionality to the information of guaranteed contractual

relationships).

Defendants argue that the Asserted Patents' claims are directed to the

abstract idea of updating records against a reference list. Defs.' Br. at 8. The

claims are equivalent to business practices of updating a customer contact list by

retrieving information, comparing information to various sources, and creating a

new list with updated information according to the Defendants. Id. at 12.

Defendants explain that the "single pass" claim limitations amount to "results-

oriented" claiming of an abstract process that courts have rejected, and that the

method of updating records by comparing them against reference lists through

generic steps is an invention that "could be performed via pen and paper or in a

person's mind." Id. at 10–12 (citing Versata Dev. Grp., Inc. v. SAP Am., Inc., 793

F.3d 1306, 1335 (Fed. Cir. 2015)).

Although the Asserted Patents claim complete data retrieval, processing, and

updating "only once," Defendants argue that this advancement is still an abstract

process, "no different from the business associate comparing a customer list to multiple sources in one pass." Id. at 12–13.  Additionally, Defendants argue that the Fortier Declaration submitted to the USPTO during the '680 Patent Reexamination opines that performing fewer memory operations is more efficient than performing more operations, and that this does not show that the Asserted Patents improve upon an abstract idea in a way that makes the invention patent eligible.  See id. at 13–15.

Plaintiff argues that the Asserted Patents are directed to "novel computer-implemented methods and systems that use a single pass technique for cleansing data records."  Pl.'s Br. at 4.  OnePass disagrees with Defendants' argument that the inventions can be done manually by a human because the single-pass methods and systems are designed to correct and eliminate human error in data records and there is no human equivalent to what the Asserted Patents achieve given the massive size of data files involved.  Id. at 4–5.  Plaintiff emphasizes that the USPTO has twice determined that the '680 Patent claims cover patent eligible subject matter.  Id. at 6–8.  OnePass argues that Defendants mischaracterize the "single-pass" claim limitations as "results-oriented" claiming, while the "single-pass" claim limitation is a method to achieve the result of "creating a cleansed output file."  Id. at 13–14.  Plaintiff claims that Defendants take comments made in the '680 Patent Reexamination out of context and notes that the USPTO Patent

Examiner withdrew its Section 101 rejections after OnePass filed claim amendments.  Id. at 17–18.

The CAFC has treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category, and Claim 1 recites a method equivalent to a combination of abstract-idea processes.  See Electric Power Group, 830 F.3d at 1354 (citations omitted).  Claim 1 recites a "computer-implemented method for creating a cleansed output file containing a plurality of business data records form a single pass through an input file[.]"  '680 Patent Reexamination Cert. at 1:18–20.  Several steps are recited to explain how the method is achieved, but the steps and the end result of a "cleansed output file" are directed at an abstract idea.  The claimed process consists of selecting a data record, referencing the record to other records, and generating a new, "cleansed" data record after the referencing is complete.  See '680 Patent.  This process is done in a "single pass through said data records[.]"  Id. at 25:45–53.

All Parties discuss the CAFC's decision in Enfish, however, Plaintiff claims that it is directly on point, while Defendants argue that it is markedly different.  Pl.'s Br. at 8; Defs.' Br. at 16.  In Enfish, for the first step of the Alice Inquiry, the CAFC considered whether a patent's claims focused on an improvement in computer capabilities or, instead, on a process that qualified as an "abstract idea"

Court No. 25-1111                                                    Page 20

for which computers were invoked merely as a tool.  Enfish, 822 F.3d at 1335–36.

The patent claims at issue in Enfish recited a data storage and retrieval system for

computer memory that involved a self-referential table.  Id. at 1336.  The CAFC

looked at the specification to confirm that the self-referential table functioned

differently than conventional database structures, and concluded that the claims

were directed to an improvement in existing technology by providing increased

flexibility, faster search times, and smaller memory requirements.  Id. at 1337.

The plain focus of the claims in Enfish was on an improvement to computer

functionality itself, rather than on "economic or other tasks for which a computer is

used in its ordinary capacity."  Id. at 1336.

        The '680 Patent describes the need for a computer software system that

efficiently manages a large input database by quickly and accurately updating data

records in a database through cleansing existing data and appending new data to

the records in the database based on reference files.  '680 Patent at 1:36–49.  The

specification states that conventional software systems directed to handling large

input databases only perform one operation at a time.  Id. at 1:58–60.  "This results

in each data record being read from the input file and written to an output file three

different times[,]" and "the extra reads and writes are exceedingly costly in both

time and computer processor resources."  Id. at 1:65–67, 2:3–5.  The '680 Patent

Court No. 25-1111                                                    Page 21

claims to solve this problem by completing these steps "only once."  Id. at 3:16–22.

Defendants argue that the Asserted Patents are directed to the abstract idea of updating records against a reference list, but that does not fully encapsulate the claim language, which includes the distinction of completing the entire multi-step process in "a single pass."  '680 Patent at 25:45–53.  The Asserted Patents are drawn to the abstract idea of reading and searching multiple data files to create a new data file in one cycle.  This definition is consistent with the descriptions of the invention as are explained in the abstract, specification, and claims.  See '680 Patent.  Considering the claim's character as a whole, the final, cleansed file that Claim 1 of the '680 Patent produces is an abstract idea, and is created by invoking generic processes of reading and comparing data files to achieve the cleansed output file.  See Free Stream Media Corp. v. Alphonso Inc., 996 F.3d 1355, 1363 (Fed. Cir. 2021) (citing McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016).  The fact that the claim language instructs that the invention completes generic processing steps only once does not change that the claim language focuses on an abstract idea.  The focus of Claim 1 is similar to cases that the CAFC has concluded to be directed to ineligible abstract ideas.  See Content Extraction 776 F.3d at 1347 (concluding that claims drawn to the basic concept of data recognition and storage were directed to an abstract idea); Electric

Court No. 25-1111                                                    Page 22

Power Group, 830 F.3d at 1354 (focusing on gathering and analyzing information

of a specified content, then displaying the results, is not directed to an abstract

idea); Smart Systems Innovations, LLC v. Chicago Transit Authority, 873 F.3d

1364, 1372 (Fed. Cir. 2017) ("We have determined that claims directed to the

collection, storage, and recognition of data are directed to an abstract idea.").

The Asserted Patents in this case "do not readily lend themselves to a step-

one finding that they are directed to a nonabstract idea." Bascom Global Internet

Services, Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1349 (Fed. Cir. 2016). The

Court concludes that Claim 1 of the '680 Patent is directed to the abstract idea of

reading and searching multiple data files to create a new data file in one cycle.

Because Claim 1 is the representative claim, the Court now turns to step two of the

Alice Analysis.

## B.   Alice Step Two

At step two, the Court looks at "the elements of each claim both individually

and 'as an ordered combination' to determine whether the additional elements

'transform the nature of the claim' into a patent-eligible application." Alice, 573

U.S. at 217; see also Mayo, 566 U.S. at 73 (explaining that steps of claims must

amount to more than "well-understood, routine, conventional activity").

Defendants argue that the Asserted Patents do not recite any inventive

concept beyond an abstract idea, and that the additional claim limitations only

recite "generic computer implementation." Defs.' Br. at 16–17. Even when considered in an ordered combination, Defendants contend that the claims still lack an inventive concept. Id. at 17. Plaintiff argues that the inventive concept is the "computer-implemented single pass data record processing operation using each of the steps detailed in the OnePass claims." Pl.'s Br. at 19. Plaintiff refers to Dr. Paul J. Fortier's declaration from the '680 Patent Reexamination as support for the opinion that the '680 Patent provides specific technological improvements to conventional data cleansing methods such as providing twelve times faster processing time and significantly less storage requirements. Id. (citing Compl., Ex. D at 8 (D.I. 1-4)). Plaintiff also claims that the inventions do not raise preemption concerns because they are directed to specific computer-implemented "single pass" methods and systems. Id. at 20. Defendants disagree and argue that the Asserted Patents describe performing the claimed methods only through conventional, commercially available computer systems to employ generic functionalities. Defs.' Reply Br. at 7.

The Complaint states that the claimed inventions are directed toward technological advances for cleaning data records that provide significant improvements and advantages over conventional data cleansing technology. Compl. at ¶ 15. The Asserted Patents are "rooted in computer technology directed to specific architecture and methods that provide major advances to the efficiency,

reliability, and operation of various applications in the data cleansing industry[,]" and describe "specific single-pass system architecture and methods that were not conventional at the time of the inventions." Id. at ¶¶ 15–16.  For example, the claimed inventions provided significant improvements in measures of time complexity, space complexity, and wall-clock time performance compared to conventional technology available at the time.  Id. at ¶ 16.

"While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." Aatrix Software, Inc., 882 F.3d at 1128.  Whether the claim elements and their ordered combination are well-known, routine, and conventional is a question of fact.  Berkheimer, 881 F.3d at 1368.  The Court must resolve plausibly alleged factual issues in favor of the patentee at Alice step two.  Aatrix Software, Inc., 882 F.3d at 1127–28.

Considering all plausible factual allegations in the Complaint as true, and drawing all reasonable inferences in favor of Plaintiff as the non-movant, the Court concludes that Plaintiff has sufficiently pled facts alleging an inventive concept that transforms the representative claim into a patent-eligible application of the abstract idea.  The Court concludes that, at the pleading stage, Plaintiff has plausibly pled factual allegations regarding the Asserted Patents to pass Alice step two.

## III.    Failure to State a Plausible Claim

Defendants argue that the Complaint's failure to define the "certain Accused Systems" or "certain Accused Methods" results in a lack of fair notice.  Defs.' Br. at 18.  Plaintiff argues that Defendants seek to impose a heightened standard for a well-pled complaint beyond what is required by Iqbal and Twombly.  Pl.'s Br. at 20.

To plead direct infringement, a plaintiff must recite "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  Bot M8 LLC v. Sony Corp. Am., 4 F.4th 1342, 1353 (Fed. Cir. 2021).  To satisfy the Iqbal pleading standard in a patent case, "[s]pecific facts are not necessary[.]"  Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation omitted).  The complaint needs to only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests."  Id. (quotation omitted).  A plaintiff must do more than assert that the product infringes the claim to provide notice.  Boston Sci. Corp. v. Nevro Corp., 415 F. Supp. 3d 482, 489 (D. Del. 2019).  Notice is provided by showing "how the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements."  Id. (emphasis omitted) (citing SIPCO, LLC v. Streetline, Inc., 230 F. Supp. 3d 351, 353 (D. Del. 2017).

The Complaint alleges that Defendants have obtained U.S. Postal Service-issued Permit Authorization for First-Class Mail and Standard Mail, describes what U.S. Postal Service-issued Permit Authorization entails, and alleges, on information and belief, that Defendants have implemented, operated, and used certain Accused Systems with computer architecture that conduct multiple steps to perform mailing list address record cleansing.  Id. at ¶¶ 18–30.  Counts I and II of the Complaint detail how the Accused Methods and Systems recite the elements of Claims 1 and 16 of the Asserted Patents.  Compl. at ¶¶ 38–51, 60–80.  The Court concludes that Plaintiff has plausibly alleged sufficient factual allegations to put Defendants on notice of their alleged infringing behavior.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (D.I. 24) is denied; and it is further

**ORDERED** that on or before June 25, 2026, the Parties shall meet and confer and file a Joint Proposed Scheduling Order in this action consistent with the applicable form Scheduling Order of Judge Connolly, which is posted at https://www.ded.uscourts.gov/ (See Chambers, Chief Judge Colm F. Connolly), along with a cover letter requesting that the Court enter the Joint Proposed Scheduling Order (if there are no disputes or other issues concerning scheduling

Court No. 25-1111                                                                                    Page 27

that the Court needs to address) or to schedule the Scheduling Conference.  If the

Parties are unable to agree upon a proposed scheduling order, each Party shall file

a proposed scheduling order by the deadline and contact my Case Manager, Steve

Taronji, by telephone at (212) 264-1611 or via e-mail at

steve_taronji@cit.uscourts.gov, to arrange a conference with the Court..


          IT IS SO ORDERED this 26th day of May, 2026.

                                              /s/ Jennifer Choe-Groves
                                              Jennifer Choe-Groves
                                              U.S. District Court Judge*

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade,
sitting by designation.